IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

SHERRY THURMOND, ET AL., )
  )
　　　　Plaintiffs, )
  )
v. ) CIVIL ACTION NO. 96-PWG-2342-NE
  )
CITY OF HUNTSVILLE, ET AL., )
  )
　　　　Defendants. )

FILED
SEP 22 1999
U.S. DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
SEP 23 1999

## MEMORANDUM OF DECISION

This matter is before the undersigned magistrate judge on defendants' motion for summary judgment. (Document #88). The parties have consented to the exercise of jurisdiction by the magistrate judge. (See documents #85 and #86). Sherry Thurmond, Levon Hall, Ronnie Hopper, Davis Rollins and Larry Thomas have alleged causes of action for excessive force, failure to train and assault and battery based on acts occurring during a strike on September 6, 1994. Several defendants have previously been dismissed on plaintiff's motion. (Documents #53, #66, #87). There are five defendants remaining in this action, City of Huntsville ("COH"), and Huntsville police officers Daniel Della-Calce, Tom Mayo, Paul Jones and Mike Culbreath. In their response to defendants' motion for summary judgment, plaintiffs agreed to the dismissal of defendant Richard V. Ottman, individually. (Document #93, pp.2,59).[1] Plaintiffs have also agreed to the dismissal of the § 1983 and state law failure to train claims. (Document #93, pp.2,59). The only claims remaining are plaintiffs' § 1983 excessive force claim against COH and Della-Calce, plaintiffs' state law claims for

---

[1]  In plaintiffs' first amended complaint, the defendants, with the exception of the City of Huntsville, were all sued only in their individual capacities. (Document #65, ¶ 3).

intentional assault and battery against Della-Calce, Mayo, Jones and Culbreath, and plaintiffs' state law claim for negligent assault and battery against COH and Della-Calce.[2]

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any

---

[2] Plaintiffs stated that they never intended to assert intentional assault and battery claims against the city and never intended to assert negligent assault and battery claims against Mayo, Jones and Culbreath. (Document #93, p.2). Clearly, any claim against the City for intentional assault and battery is barred by *Alabama Code*, § 11-47-190. Plaintiffs have conceded that any claims against Mayo, Jones and Culbreath would be barred by the two year statute of limitation. (Document #93, p.58).

2

> material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if disputed, viewed in the light most favorable to plaintiffs. On or about June 21, 1994 the union employees of the Dunlop Tire Company ("Dunlop Plant") went on strike. Plaintiffs were participants in this strike. Apparently because of the close vote in late August or early September 1994 in which a proposed contract was rejected, there was concern among the strikers that many union workers would cross the line and return to work on September 6, 1994. As a result of this concern the strikers decided to assemble at the Dunlop plant during the early morning hours of September 6, 1994 as a show of unity and solidarity. During the months preceding September 6, 1994 there were sixteen to twenty strikers engaged in picketing at the Dunlop plant at any given time. On September 6, 1994, between 800 and 1200 strikers were at the plant.

The Mobile Field Force (MFF) of the Huntsville Police Department arrived at the Dunlop plant around 5:00 a.m. on August 6, 1994. After the MFF arrived on the scene, there were numerous incidents of objects being thrown at cars traveling along Dunlop Boulevard, resulting in property damage to cars and some personal injury. The destructive activity took place on the road away from the main gate area. Plaintiffs were located at the main gate. At approximately 5:45 a.m., the MFF moved toward the main gate entrance of the Dunlop plant. At 5:46 a.m. Lt. Della-Calce

3

read a dispersal order to the strikers over a bullhorn advising the crowd that the situation had been declared an unlawful assembly, that everyone was required to leave the area immediately and that they would be arrested if they failed to disperse. In order to encourage the crowd's departure, approximately one minute after the dispersal order was read Lt. Della-Calce ordered the MFF to march toward the crowd at half-step pace while tapping their protective shields. After the MFF began marching toward the crowd, plaintiffs Thurmond, Hall and Hopper sat directly in the pathway of the MFF on Dunlop Boulevard with their backs to the MFF. Plaintiffs Thompson and Rollins joined the other plaintiffs but stood facing the MFF. The MFF continued to march forward at half-step pace toward plaintiffs. The main body of strikers were at least twenty yards from the plaintiffs. Although the assembled strikers were vocal, they were not violent. When the MFF got within a few yards of plaintiffs, Lt. Della-Calce ordered the MFF to swing their batons in front of the shields in a waist level or lower arc. As the MFF marched toward plaintiffs swinging their batons, MFF officers yelled at plaintiffs to move or they would be struck.

Plaintiffs did not move and were struck by the officers in the front line of the MFF.[3] Prior to being struck plaintiffs made no aggressive display. No attempt was made to arrest plaintiffs before they were struck by the front line officers who had continued to swing their batons as commanded by Lt. Della-Calce. Plaintiffs Thurmond, Hall and Hopper were arrested after they were struck. Plaintiffs Thurmond, Hall and Hopper were also struck with batons during the course of their arrest and cuffing. In the second amended complaint, plaintiffs complain only of the front line's striking of plaintiffs while marching toward plaintiffs while swinging their batons in a waist level or

---

[3] Plaintiff Thurmond was struck by defendant Mayo, plaintiff Hall was struck by defendant Culbreath, plaintiff Hopper was struck by defendant Jones, plaintiff Rollins was struck by Officer Sharp and plaintiff Thompson was struck by Officer J. Jones. Neither Sharp nor J. Jones are defendants in this action.

4

lower arc. (Second Amended Complaint, ¶ 16, 23, 27). The complaint does not challenge the striking of plaintiffs while officers were attempting to handcuff plaintiffs.

Although plaintiffs did not make a formal complaint (plaintiff's Exhibit #24, p.108), Ottman nevertheless sought an opinion from an outside force expert, Ron Kiker. (Plaintiff's Exhibit #24, p.99). Kiker addressed only the actions of the arrest team because he was not asked to give an opinion about what happened before the arrest team came into contact with two of the plaintiffs. (Plaintiff's Exhibit #31, pp.36,72). In addition, Captain Jack Meeks, Director of Training, reviewed the videotape and advised Ottman by memorandum that the force used by the arrest team was justified. (Defendants' Exhibit BB). Meeks further testified that his concentration was on what took place by the arrest team rather than by the front line. (Defendants' Exhibit O, pp.31-32).

I.  Excessive force claim

    A. City of Huntsville

A municipality is not liable under the theory of *respondeat superior* in a § 1983 action based on the wrongful actions of its police officers. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

"[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Monell*, 436 U.S. at 694. Municipal liability does not attach unless the municipality's policies are the "moving force" behind the constitutional violations. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997). Municipal liability may be imposed under the following circumstances: (1) an officially promulgated policy sanctioned or ordered by the municipality, *see Pembaur v. City of*

5

*Cincinnati*, 475 U.S. 469, 480 (1986); *Monell*, 436 U.S. at 690; (2) a pervasive custom or practice approved of by the municipality or which the municipality is aware or should be aware, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988); *Oklahoma v. City of Tuttle*, 471 U.S. 808, 823-24 (1985); Monell, 436 U.S. at 690; (3) a single act taken by the municipal employee who, as a matter of state law, has final policymaking authority with respect to the area in which the action is taken, *see McMillan v. Monroe County*, 520 U.S. 781, 784 (1997); *Praprotnik*, 485 U.S. at 129-30; *Pembaur*, 475 U.S. at 480-83; or (4) where the failure of the municipality to train its employees rises to the level of deliberate indifference to the constitutional rights of others, *see City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

There is no contention that COH has an <u>officially</u> promulgated policy that allows the use of excessive force on passive resisters. Further, as previously noted, plaintiffs have withdrawn both their Section 1983 and their state law failure to train claims.

Plaintiffs argue that the COH has a custom of permitting officers to use excessive force. Plaintiffs allege that despite the fact that 150 excessive force complaints were filed during the 10 years preceding September 6, 1994, Chief Ottman never sustained a charge of excessive force by an officer during an arrest. (Doc # 93, plaintiffs' response, p. 31). Plaintiffs, however, do not advise the court how many of the 150 excessive force complaints actually involved the use of force prior to or during an arrest or if the complaints involved passive resisters. Instead, plaintiffs submitted as exhibits documents from fifteen selected files involving allegations of excessive force during arrests in which no disciplinary action was taken. (See plaintiff's Exhibit #15 (exhibits Q-EE)). Plaintiffs have failed to show that any of these complaints actually had merit. The mere number of excessive

force complaints bears no relation to their validity. *Gold v. City of Miami,* 151 F.3d 1346, 1351 (11th Cir. 1998); *Brooks v. Scheib,* 813 F.2d 1191, 1193-95 (11th Cir. 1987).[4]

Plaintiffs also allege that Ottman's failure to initiate any investigation into the front line's assault of plaintiffs shows the city's custom of permitting excessive force. First, plaintiffs did not file a formal complaint which they certainly could have done. Second, the video tapes do not present a clear view of what occurred on September 6, 1994. It is apparent that the MFF was marching toward plaintiffs while swinging the batons at waist level or lower. Many of the actions of the arrest team were clearly visible and generated comment from the local television station. What happened prior to that, when the front line descended upon plaintiffs, is much less clear. Without more, it is inappropriate to look at Ottman's failure to initiate an investigation as evidence of the city's custom prior to the September 6, 1994 incident.

While plaintiffs complain that the procedure used for reviewing complaints supports a custom of failing to discipline acts of excessive force, this is also without merit. Formal citizen complaints are investigated by a separate internal affairs unit of the police department. (Plaintiffs' Exhibit #10). Further, the formal complaint is investigated by Internal Affairs and then reviewed by the police chief. (Plaintiff's Exhibit #9). While reviewing the findings and recommendations of the

---

[4] Four of the complainants in the fifteen files did not wish to make statements to the Internal Affairs' investigator (plaintiff's Exhibit #15, Q,R,AA,BB) and one of the complainants could not remember anything about his arrest. (Plaintiff's Exhibit #15, CC). Under these circumstances, it would be extremely difficult for Internal Affairs to recommend that a complaint be sustained. In addition, in some of the files, the investigator noted that there were no injuries or only minor injuries. The lack of injury may be considered in determining that the force used was not excessive. *See Graham v. Connor,* 490 U.S. 386, 395 (1989) (reaffirming that not every push or shove violates the Fourth Amendment); *Crosby v. Paulk,* ___ F.3d ___, 1999 W.L. 703193, *8 (11th Cir., September 10, 1999) ("In making this objective assessment [whether the officer's use of force was objectively reasonable], a court may consider in addition to physical injury 'other relevant actors....'"*See also Gold v. City of Miami,* 121 F.3d 1442, 1446 (11th Cir. 1997) ("The minor nature of injury [skin abrasions for which plaintiff did not seek medical treatment] reflects that minimal force was used to apply the handcuffs.")

Internal Affairs Department, the police chief exercises his own independent judgment. (Plaintiff's Exhibit #25, pp.29-30). This exercise is based on the information he received from Internal Affairs. (Plaintiff's Exhibit #25). Plaintiffs have not introduced evidence that the police chief ignored or failed to consider the findings and recommendations by Internal Affairs. The fact that the chief was not absolutely bound by the Internal Affair's conclusion does not render the complaint system deficient. Further, plaintiffs have failed to show that the complaint procedure was a moving force of the constitutional violation and that plaintiffs' injuries would have been prevented by a different complaint procedure. *Brooks*, 813 F.2d at 1195.

Plaintiffs also argue that Ottman was a final policymaker for the COH in the area of law enforcement and that he delegated his policymaking authority concerning the MFF to Della-Calce thereby in effect making Della-Calce a final policy maker. While a final policymaker may delegate his power to a subordinate whose decision, if unconstrained and not subject to review would then constitute official policy, *see, Praprotnik*, 485 U.S. at 125-28, Della-Calce's decision was not unconstrained. Rather, Della-Calce was constrained by the policies and procedures of the COH, including the Civil Disorder and Use of Force written directives. (Defendants' Exhibit U, ¶7). The Civil Disorder written directive clearly stated that movement of the MFF is the last alternative and further states that marching with swinging batons is the last progression. (Defendants's Exhibit CC, p.5). Further, the Use of Force Written directive states "officers will exert only the degree of force necessary to effect the arrest or compliance with lawful orders; more will be considered excessive

8

force." (Defendants' Exhibit DD, p.2). The directive further describes when a baton may be used. (Defendants Exhibit DD, p.4).[5/]

Further, COH trains all of its police officers that there is no justification for striking passive resisters with impact weapons. (Defendants' Exhibit V, affidavit of Kirk Giles).[6/] "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departure from them, are the act of the municipality." *Praprotnik*, 485 U.S. at 127. Defendant Della-Calce's action complained of here does not support an inference of municipal custom or policy.

Further, Della-Calce's decision was subject to review by his superiors and the Chief of Police. (Defendants' Exhibit U, ¶ 7, Defendants' Exhibit G, pp.103-04; Defendants' Exhibit I, p.225). The fact that his decision that was subject to review was not in fact subjected to review does not render Della-Calce a final policy maker. Because Della-Calce was not a final policymaker and because plaintiffs have not shown a pervasive custom or practice approved of by COH, COH is entitled to summary judgment on plaintiffs' excessive force claim.

B.  Della-Calce

An excessive force claim brought under § 1983 for conduct occurring "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

---

[5/]  The court further notes that *Alabama Code* § 13A-3-27(a)(1)(2) specifies that a peace officer may use physical force which he reasonably believes to be necessary in or to make a misdemeanor arrest or to protect himself while making a misdemeanor arrest.

[6/]  In written examinations, Della-Calce, Mayo, Jones, Culbreath all indicated that the statement # 18, "To strike a passive resister with an impact weapon is justified" was false. (Defendants' Exhibits V-1, V-2, V-3, and V-4).

Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court has described the test of reasonableness under the Fourth Amendment as follows:

> ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S., at 8-9, 195 S. Ct., at 1699-1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. ... "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d, at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

490 U.S. at 396-397.

In *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cr. 1997), the Eleventh Circuit explained the law of qualified immunity in the context of a Fourth Amendment claim where there is no factually similar case:

> An official sued as an individual is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ... "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Fourth Amendment jurisprudence has staked no bright line for identifying force as excessive. Therefore, unless a controlling and factually similar case declares the official's conduct unconstitutional, an excessive-force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law. Smith cites no Fourth Amendment case, and this court has located none, in which a police officer subjected a previously threatening and fleeing arrestee to nondeadly force after the arrestee suddenly became docile. Smith therefore must show that Mattox's conduct was so far beyond the hazy border between excessive and acceptable force that Mattox had to know he was violating the Constitution even without case law on point.

*Smith v. Mattox*, 127 F.3d at 1419. Applying the test set forth in *Graham* in the qualified immunity context, the Eleventh Circuit concluded that the grunt and the blow that plaintiff heard and felt when the officer pulled plaintiff's arm behind his back coupled with the severity of his injury [a broken arm] and the fact that the plaintiff was offering no resistance at all pushed the case over the line.

Likewise, in the case before this court plaintiffs were guilty of a minor offense, disorderly conduct, a misdemeanor. Plaintiffs were passively resisting by sitting in the path of the

11

MFF. Only yards and seconds before the Mobile Field Force (MFF) squad reached plaintiffs, defendant Della-Calce ordered the squad to change from shield striking mode to baton swinging mode resulting in a substantial likelihood that at least some of the plaintiffs would be struck by the swinging batons.

There was no evidence that the plaintiffs, three of whom sat on the ground with their backs to the MFF, posed any threat to the officers. Although defendants allege that some officers were struck by objects while marching toward plaintiffs, this is in dispute. Captain Roger Dean, the highest ranking officer on site, did not see or hear objects being thrown. (Plaintiffs' Exhibit 26 at 129, 186, 190). At least two officers admitted they did not see or hear objects being thrown and plaintiffs did not see or hear objects being thrown. (Plaintiffs' Exhibit 49 at 38; plaintiffs' exhibit 48 at 30-31; plaintiffs' exhibit 16 at 128; plaintiffs' exhibit 18 at 81-82; plaintiffs' exhibit 20 at 145; plaintiffs' exhibit 17 at 77-78; plaintiffs' exhibit 19 at 58-59,94). Further, the videotapes do not show objects being thrown at the MFF. Plaintiffs were struck by the front line of the MFF prior to any attempt to arrest them.

This case, as did *Smith v. Mattox*, "falls within the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying case law." *Smith v. Mattox*, 127 F.3d at 1420.[2] This result is consistent with the holdings by other courts involving excessive force claims arising out of demonstrations, protests and strikes. In *Wilson v. Hubbard*, 900

---

[2] See also *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998) and *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998). These cases relied on by plaintiffs, are arguably distinguishable in that while the court applied the *Graham* test, the court also concluded that the officers had no probable cause to arrest the plaintiffs and, as a result, were not justified in using any force. Plaintiffs in this case have not alleged that there was no probable cause to arrest them. See also *Nolin v. Town of Springville*, 45 F. Supp. 2d 894, 906-07 (N.D. Ala. 1999), appeal pending, (Police officer not entitled to qualified immunity on excessive force claim when "play fight" had ceased, offense was disorderly conduct, there was no attempt by plaintiff to threaten anyone or resist arrest, and officer kneed plaintiff in the back and shoved his face and chest against van.)

12

F.2d 263, 1990 W.L. 43011 (9th Cir. 1989), the court held that officials who allowed a train to crash into protesters were not entitled to qualified immunity because a reasonable official would know that such an act would be in violation of substantive due process of law or, alternatively, would be excessive under the Fourteenth Amendment. In *Secot v. City of Sterling Heights*, 985 F. Supp. 715 (E.D. Mich. 1997) the court held that a police officer who struck plaintiff with a baton while he was peaceably standing in a picket line and not threatening an officer or other member of the police was not entitled to qualified immunity. In *Lamb v. City of Decatur*, 947 F. Supp. 1261 (C.D. Ill. 1996), the court held that police officers who sprayed pepper spray into a crowd of unarmed labor demonstrators were not entitled to qualified immunity. The *Lamb* court noted that the severity of the crime was at most trespass. Plaintiffs did not pose an immediate threat to the safety of the officers or others as they were unarmed, plaintiffs were not actively resisting arrest, and the police arrested only one demonstrator and that was after he had been sprayed with pepper spray.

The facts of this case make the unlawfulness of defendant Della-Calce's ordering the MFF to swing batons while marching toward the passively resisting plaintiffs readily apparent even without a factually similar Eleventh Circuit case. Defendant Della-Calce is not entitled to qualified immunity with respect to the excessive force claim.

II.     State law claims

With respect to plaintiffs' claims of assault and battery, defendants argue that they are entitled to discretionary function immunity under *Alabama Code* § 6-5-338 (1975) which provides in pertinent part:

> (a) Every peace officer ... whose duties ... include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who

13

is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

(b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.

In *Wright v. Wynn*, 682 So.2d 1 (Ala. 1996), the Alabama Supreme Court discussed the doctrine of discretionary function immunity:

> Discretionary acts have been defined as those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances. See *L.S.B v. Howard*, 659 So.2d 43 (Ala. 1995)....
>
> [A] state officer or employee is not protected under the doctrine of discretionary function immunity if he acts willfully, maliciously, fraudulently, or in bad faith. Acts of such a nature are not considered to be discretionary in nature within the meaning of our cases.

In *Town of Loxley v. Coleman*, 720 So.2d 907, 909 (Ala. 1998), the Alabama Supreme Court explained the difference between discretionary and ministerial functions:

> [D]iscretionary functions are characterized by planning and decision-making, while ministerial functions are characterized by operational tasks." *Ex parte Alabama Dep't of Forensic Sciences*, 709 So.2d at 458. Where the exercise of a defendant's function

14

> requires due care, rather than difficult decision-making, the function is merely ministerial. *Bell v. Chisom*, 421 So.2d 1239, 1241 (Ala. 1982).

The Alabama Court of Criminal Appeals recently discussed the concept of malice:

> Legal malice may be defined as "the intentional doing of a wrongful act without just cause or excuse, either with an intent to injure the other party or under such circumstances that the law will imply an evil intent." *Empiregas, Inc. v. Feely*, 524 So.2d 626, 628 (Ala. 1988). Moreover, malice is generally a fact issue; "the existence of malice being a fact which in the nature of things is incapable of positive, direct proof, it must of necessity be rested on inferences and deductions from facts" that can be presented to the trier of fact. *National Sec. Fire & Cas. Co. v. Bowen*, 447 So.2d 133, 140 (Ala. 1983).

*Hinson v. Holt*, 1998 W.L. 802752, *6 (Ala. Civ. App. 1998).

Della-Calce, acting in a supervisory role over the MFF, may have been performing a discretionary function. *L.S.B. v. Howard*, 659 So.2d 43, 44 (Ala. 1995) ("The exercise of supervisory functions is usually discretionary, because it requires 'constant decision making and judgment' by the person in the supervisory role.") Conversely, the members of the MFF were performing ministerial functions in following Della-Calce's orders.[8] Assuming, however, that the actions of all of the individual defendants were viewed as discretionary, none of these defendants are entitled to discretionary function immunity because there is a fact question presented whether excessive force was used in striking plaintiffs with batons prior to attempting to arrest them and such a question

---

[8] The Civil Disorders written directive lists as one tactic used in crowd control "Do not allow independent action (all activity is on command from the Field force Commander)." (Defendants' Exhibit CC, p.4, 10A.8). Captain Kinney Bryant also testified that officers are not trained that they have discretion whether to follow orders but rather it was critical that everyone follow orders. (Defendants' Exhibit 45, pp.54-55).

15

necessarily raises a question of whether the act was wilful, malicious, fraudulent or in bad faith. *See Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996); *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998).

The *Wright* court explained why it granted the state trooper's motion for summary judgment on the false imprisonment claim while denying the motion for summary judgment on the assault and battery claim:

> Clearly, Wright's duties as a law enforcement officer required him to make a split-second identification under difficult circumstances. Although, regrettably, Wright made the wrong decision in arresting Wynn, his decision nonetheless falls within the definition of a "discretionary act" as discussed in our cases.
>
> . . . .
>
> Because the record indicates that a fact question was presented as to whether Wright used excessive and illegal force in arresting Wynn, we cannot agree that the doctrine of discretionary function immunity precludes Wynn's assault and battery claim. <u>A mistake in identifying a suspect is one thing; abusing a suspect who has been detained and subdued is quite another. Simply put, a state trooper has a legal obligation to conduct himself in a professional manner and within the bounds of law in making an arrest.</u> Another jury should be allowed to determine whether Wright met that obligation under the facts of this case. (Emphasis added).

This case when viewed in light of *Wright v. Wynn* requires that a jury be allowed to determine whether defendants are liable for assault and battery. Defendants Della-Calce, Mayo, Jones and Culbreath are not entitled to summary judgment with respect to the assault and battery claims.

Further, the COH is not entitled to summary judgment based on the negligent assault and battery claim against Della-Calce and § 11-47-190 which does not immunize municipalities from

the negligence of city employees. *See Franklin v. City of Huntsville,* 670 So.2d 848 (Ala. 1995); *Luckie v. City of Montgomery*, 1999 W.L. 64930 (Ala. Civ. App. February 12, 1999).

      A separate order consistent with this Memorandum of Decision will be entered simultaneously herewith.

      DONE this the 21rd day of September, 1999.

                                              PAUL W. GREENE
                                              UNITED STATES MAGISTRATE JUDGE